D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
HILARY BEST,

                     Petitioner,                               MEMORANDUM & ORDER

      -against-                                        12-CV-6218 (NGG)

ANN MARIE BARBAROTTA, Director of
Creedmoor Psychiatric Center,

                     Respondent.
------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

On December 18, 2012, Petitioner Hilary Best filed a <u>pro se</u> Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2243,[1] challenging his commitment at Creedmoor Psychiatric Center ("Creedmoor"). (Pet. (Dkt. 1).) On April 19, 2013, Petitioner informed the court that he had been released from Creedmoor. (Mot. for Extension of Time (Dkt. 15).) Petitioner then filed a letter indicating that he wished to continue pursuing this action, which the court construed as an Amended Petition. (<u>See</u> Am. Pet. (Dkt. 23); July 13, 2015, Order to Show Cause (Dkt. 24).) Respondent Ann Marie Barbarotta now moves to dismiss the Amended Petition for lack of subject matter jurisdiction, on the ground that Petitioner's release mooted his habeas claim. (Mot. to Dismiss (Dkt. 29); <u>see also</u> Mem. in Supp. of Mot. to Dismiss ("Resp't's Mem.") (Dkt. 30).) For the reasons set forth below, the court GRANTS Respondent's motion and DISMISSES the Amended Petition.

I.     BACKGROUND

In or about December of 2011, Petitioner was arrested and charged with several misdemeanor offenses, including stalking and harassment. (R. (Mot. to Dismiss, Attach. 2

---

[1] The court evaluates the Petition pursuant to 28 U.S.C. § 2254, which is the proper vehicle for a challenge to involuntary civil commitment. (<u>See</u> Jan. 4, 2013, Order (Dkt. 7) at 2 n.1.)

1

(Dkt. 29-2)) at 1-8.) On September 7, 2012, the New York County Supreme Court found Petitioner unfit to stand trial on these charges, based on the results of a psychiatric examination pursuant to New York Criminal Procedure Law ("CPL") § 730. (Id. at 9-10.) The state court then committed Petitioner to the custody of the Commissioner of the New York State Office of Mental Health, pursuant to CPL § 730.40. (Id. at 11.)

On October 8, 2012, Petitioner filed a habeas petition in state court, claiming that the New York County Supreme Court had improperly found him to be incompetent under CPL § 730. (Id. at 70-103.) On December 5, 2012, while his state habeas petition was pending, Petitioner was involuntarily committed to Creedmoor based on an application pursuant to New York Mental Hygiene Law ("MHL") § 9.27. (Id. at 16-19.) On December 11, 2012, the Appellate Division, First Department, summarily denied the state habeas petition. (Id. at 114.)[2] On December 17, 2012, Petitioner filed the instant federal habeas Petition before this court, challenging aspects of the December 5, 2012, application for involuntary commitment. (Pet.)[3] Petitioner then requested a hearing under MHL § 9.31(a) to contest his involuntary commitment, and a hearing was scheduled for December 26, 2012, at Creedmoor. (Id. at 20.) On January 2, 2013, the Queens County Supreme Court denied Petitioner's application for release. (Id. at 59.) On February 13, 2013, the Queens County Supreme Court entered an order extending Creedmoor's retention of Petitioner for an additional six months, pursuant to MHL § 9.33. (Id. at 61-66.)

---

[2] Petitioner did not apply to the New York Court of Appeals for leave to appeal the Appellate Division's denial of his state habeas petition. (See Pet. at 2.) Nonetheless, Petitioner claims that his state habeas petition exhausted his federal habeas claim. (See id.) Respondent has argued that Petitioner's federal habeas claim is, in fact, unexhausted and thus procedurally defaulted (Resp't's Mem. at 3 n.5); however, Respondent declined to assert the exhaustion defense in her motion, and the court need not address this argument here because Petitioner's claim is moot.

[3] Petitioner has brought a separate action challenging the constitutionality of his involuntary commitment, pursuant to 42 U.S.C. § 1983. (See Best v. Schecter, No. 12-CV-6142 (NGG) (MDG).)

Later that same month, Petitioner requested a rehearing and de novo jury review of the state court's February 13, 2013, retention order. (See id. at 67-68.) The state court granted Petitioner's request for a jury trial, and the jury subsequently found in Petitioner's favor. (See Mot. for Extension of Time; Resp't's Mem. at 3.) On March 21, 2013, Petitioner was ordered released from detention at Creedmoor. (See Mot. for Extension of Time.)[4]

On May 21, 2015, this court directed Petitioner to inform the court "whether he wishe[d] to pursue this proceeding." (Order (Dkt. 21).) By letter dated June 29, 2015, Petitioner indicated that he did wish to pursue this action, and he requested that the court:

> [D]ispose of the matter by issuing a declaratory judgment, declaring that the defendant violated [his] rights, and subjected [him] to unlawful detention, by committing [him] to civil commitment, and detaining [him] thereby, in violation of established state statutory laws, which deprived [him] of liberty without due process of law, and without affording equal protection, in violation of the federal constitution.

(Am. Pet.) The court construed this letter, along with the original Petition, as an Amended Petition. (Order to Show Cause at 2.)

On October 23, 2015, Respondent filed a motion to dismiss this action for lack of jurisdiction, on the ground that Petitioner's release mooted his habeas claim. (Mot. to Dismiss.) Petitioner has not responded to Respondent's motion, although Respondent mailed her motion to Petitioner's post office box on record. (See id. at 2.)

## II. LEGAL STANDARD

An individual's "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Addington v. Texas, 441 U.S. 418, 425 (1979).

---

[4] Respondent notes that she has been unable to obtain a copy of the state court's order or judgment directing that Petitioner be released, but that his release is undisputed. (Resp't's Mot. at 3 n.4.)

3

"A federal petition for a writ of habeas corpus, following the exhaustion of all available state remedies, is the proper vehicle by which an individual can challenge his or her involuntary commitment or retention in a mental institution." Nyenekor v. New York, No. 09-CV-8719 (DAB) (LMS), 2014 WL 785690, at *8 (S.D.N.Y. Feb. 25, 2014) (citing Buthy v. Comm'r of Office of Mental Health, 818 F.2d 1046, 1051 (2d Cir. 1987)).

"Mootness is a jurisdictional matter relating to the Article III requirement that federal courts hear only 'cases' or 'controversies.'" Blackwelder v. Safnauer, 866 F.2d 548, 550 (2d Cir. 1989) (citing Preiser v. Newkirk, 422 U.S. 395, 401 (1975)). A case is moot "when the issues presented are no longer 'live' or the parties 'lack a legally cognizable interest in the outcome.'" Blackwelder, 866 F.2d at 551 (quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982)). "When this occurs, the Constitution's case or controversy requirement is not satisfied and a federal court lacks subject matter jurisdiction over the action." Meyers v. Williams, No. 10-CV-620 (CBA) (LB), 2011 WL 721647, at *2 (E.D.N.Y. Feb. 22, 2011) (citing Blackwelder, 866 F.2d at 550). "[W]hen the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated, then it becomes impossible for the court to grant any effectual relief whatever to the prevailing party. In that case, any opinion as to the legality of the challenged action would be advisory." City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000) (internal quotation marks and citations omitted).

A habeas petitioner generally has the burden of proving that subject matter jurisdiction exists. See Luckett v. Bure, 290 F.3d 493, 496-97 (2d Cir. 2002); Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996). Where a habeas petitioner challenges a state criminal conviction but is subsequently released from custody, courts may presume the continuing existence of collateral consequences of the conviction such that the petition will not necessarily be moot. See

Spencer v. Kemna, 523 U.S. 1, 8-11 (1998) (noting the development of a practice of presuming collateral consequences of criminal convictions sufficient to satisfy Article III, but declining to extend the presumption to areas beyond convictions). However, where a habeas petitioner challenges an involuntary commitment, as opposed to a conviction, there is no such presumption. See id. at 12-13. Accordingly, a petitioner's release from involuntary commitment will moot his petition unless he affirmatively demonstrates a collateral consequence of that commitment from which the court may grant relief. See United States v. Mercurris, 192 F.3d 290, 294 (2d Cir. 1999) ("There being no presumption of collateral consequences, [defendant] must bear the burden of demonstrating some 'concrete and continuing injury' sufficient to create an Article III case or controversy." (quoting Spencer, 523 U.S. at 7, 14)); Nyenekor, 2014 WL 785690, at *9 ("Petitioner is no longer subject to any of the orders he seeks to challenge because he has been released from the custody of the [Office of Mental Health]. . . . Because this Court cannot now release petitioner from such custody, there is no actual injury which is likely to be redressed by a favorable judicial decision, sufficient to satisfy Article III, and, thus, the issue is moot." (internal quotation marks and citation omitted)); Meyers, 2011 WL 721647, at *2 ("As [petitioner] is no longer involuntarily confined [in the mental health facility] . . . the case is dismissed as moot.").

## III.  DISCUSSION

Petitioner has not responded to Respondent's assertion of mootness; nor has he identified any collateral consequences that continue beyond his release from involuntary commitment. Petitioner is no longer committed or retained, and there appears to be no remaining injury for the court to redress. Accordingly, Petitioner's habeas claim is moot and must be dismissed for lack of subject matter jurisdiction.

Furthermore, although Petitioner has amended his Petition to seek only a declaratory judgment that Respondent and others violated his constitutional rights, these claims do not revive his mooted habeas claim. Instead, they appear to be duplicative of Petitioner's 42 U.S.C. § 1983 action against Respondent and others, which is currently pending before the court. (See Am. Compl. (Dkt. 6), Best v. Schecter, No. 12-CV-6142.) In both actions, Petitioner claims that Respondent subjected him to the same purportedly unlawful civil commitment, in violation of his rights to due process and equal protection. (See id.; Am. Pet.)

"[P]laintiffs 'generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant.'" Kanciper v. Suffolk Cty. Soc'y for the Prevention of Cruelty to Animals, Inc., 722 F.3d 88, 92 (2d Cir. 2013) (quoting Adams v. Cal. Dep't of Health Servs., 487 F.3d 684, 688 (9th Cir. 2007)). The claim-splitting doctrine "allows district courts to 'manage their docket and dispense with duplicative litigation' by dismissing the later of two actions 'when [a] plaintiff had previously filed related claims that were pending in the same federal court against the same defendants.'" LG Elecs., Inc. v. Wi-LAN USA, Inc., No. 13-CV-2237 (RA), 2014 WL 3610796, at *7 (S.D.N.Y. July 21, 2014) (quoting Kanciper, 722 F.3d at 92).

Accordingly, to the extent that Petitioner asserts a declaratory judgment claim independent of his now-mooted habeas claim, the court dismisses this claim pursuant to the claim-splitting doctrine, as it is duplicative of Petitioner's separate § 1983 claims against Respondent. (See Am. Compl., Best v. Schecter, No. 12-CV-6142.) See also Clayton v. District of Columbia, 36 F. Supp. 3d 91, 96 (D.D.C. 2014) (dismissing the later of two duplicative actions under the claim-splitting doctrine, noting that dismissal "will not adversely impact [plaintiff]," because she "maintains an avenue . . . to seek redress" of her claims).

## IV. CONCLUSION

For the reasons set forth above, the court DISMISSES the Amended Petition. Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. See 28 U.S.C. § 2253. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and, therefore, in forma pauperis status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
April 15, 2016

NICHOLAS G. GARAUFIS
United States District Judge